IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAIME JARAMILLO, JASON )
CISZEWSKI, MICHELLE CISZEWSKI, )
LEONARDO BIUNDO, and CRYSTAL )
BIUNDO, On Behalf of Themselves and )
All Others Similarly Situated, )
             )
  Plaintiffs, )
             )
  v. )  Case No. 09 C 1983
             )
DINEEQUITY, INC., a Delaware )  Magistrate Judge Morton Denlow
Corporation, APPLEBEE'S )
INTERNATIONAL INC., d/b/a )
APPLEBEE'S NEIGHBORHOOD GRILL )
& BAR, a Kansas Corporation, and )
WEIGHTWATCHERS INTERNATIONAL, )
INC., a Virginia Corporation, )
             )
  Defendants. )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion to transfer venue by Defendants DineEquity, Inc., Applebee's Neighborhood Grill and Bar, and WeightWatchers International, Inc. (collectively "Defendants"). Defendants assert the case should be transferred to the District of Kansas where a nearly identical case against Defendants was first filed. Alternatively, Defendants request the Court to stay the Illinois action pending the outcome of the Kansas case, or pending a ruling on the motion to transfer currently before the Judicial Panel on Multidistrict Litigation ("MDL"). Plaintiffs Jaime Jaramillo, Jason Ciszewski, Michelle Ciszewski, Leonardo Biundo, and Crystal Biundo (collectively

"Plaintiffs") assert the Illinois case is materially different from the Kansas action and should continue in Illinois. This Court held oral argument on September 23, 2009. For the reasons set forth below, the Court grants Defendants' motion to transfer venue.

## I. BACKGROUND FACTS

**A.     Procedural History**

Plaintiffs filed their Class Action Complaint in the Circuit Court of Cook County on November 20, 2008, alleging that Defendants misrepresented the WeightWatchers POINTS® values, fat content, and calorie content in certain Applebee's Neighborhood Grill & Bar's ("Applebee's") WeightWatchers menu items.[1] Dkt. 1[2]. The case was removed from the Circuit Court to this Court in March 2009. Dkt. 1. The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c)(1). Dkt. 25. Defendants filed the present motion to transfer venue on the grounds that a nearly identical case against Defendants is currently pending in the District of Kansas, having been filed two months before Plaintiffs commenced this action.

---

[1] WeightWatchers is a weight loss program that limits food intake to a certain number of POINTS® per day. Point values are assigned to each food item based on the item's nutritional content, such as fat and fiber grams and calorie content.

[2] "Dkt. __" refers to the docket entry in this court. "Comp." refers to the Illinois Plaintiffs' Class Action Complaint, included in the record in Defendants' Notice of Removal, Dkt. 1."Kansas Dkt. __" refers to the docket entry for *Valiente v.DineEquity, Inc.*, Case no. 08-cv-2416, in the District of Kansas. "Kansas Comp." refers to the Plaintiffs' First Amended Complaint in the Kansas Action, included in the record as Exhibit B in Dkt. 36. "Pl. Opp." refers to the Plaintiffs' Opposition to Defendants' Motion to Transfer Venue, Dkt. 44. "Norris Decl." refers to the Declaration of Trenton H. Norris filed in support of the Defendants' Motion to Transfer Venue, Dkt. 36. "Not. of Removal" refers to Defendants' Notice of Removal, Dkt. 1. "Answers & Aff. Defenses" refers to Defendants' Answers & Affirmative Defenses, Not. of Removal ¶¶ 16-18, Exhibit D, Dkt. 1.

**B.	The Illinois Action**

Plaintiffs are Illinois residents who have sued Defendants on behalf of themselves and all others who ordered and purchased items from Applebee's WeightWatchers menu between 2004 and the date of judgment in this case. Comp. ¶ 17. Specifically, Plaintiffs allege they were defrauded and suffered damages when Defendants misrepresented the actual WeightWatchers POINTS® values, fat content, and calorie content in certain WeightWatchers menu items in order to increase customer visits and food sales. *Id.* ¶ 1.

Applebee's is a chain restaurant owned by DineEquity, with 1900 locations nationwide. Each Applebee's restaurant has the same or substantially the same menu. In 2003, Applebee's entered an agreement with WeightWatchers to offer the WeightWatchers menu items to customers. Each of the named Plaintiffs are active members of the WeightWatchers diet program and claim to have eaten frequently at Applebee's since 2004 when the healthier fare was added to the menu. *Id.* ¶ 9. During some or all of the visits they chose items from the WeightWatchers menu. *Id.* ¶ 16.

Plaintiffs offer the results of an independent laboratory test which indicates that certain Applebee's menu items may contain greater levels of fat and calories, and therefore higher POINTS® values, than those listed on the menu. *Id.* ¶ 14. Plaintiffs contend the misrepresentation was intentional and allege six counts in their complaint: violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 (Count I); violation of the Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 (Count II); Unjust Enrichment (Count III); Breach of Contract (Count IV); Breach of Implied

Warranty of Merchantability for a Particular Purpose, 810 Ill. Comp. Stat. 5/2-314 & 315 (Count V); and Breach of Express Warranty, 810 Ill. Comp. Stat. 5/2-313 (Count VI).

**C.    The Kansas Action**

A set of plaintiffs filed a similar class action lawsuit in the District of Kansas on September 9, 2008 ("Kansas action"), approximately two months prior to commencement of the Illinois action. The Kansas plaintiffs, like the Illinois Plaintiffs, allege that Defendants DineEquity, Inc., Applebee's International, Inc., and WeightWatchers International, Inc. fraudulently provided false nutritional data on Applebee's WeightWatchers menu. Kansas Comp. ¶ 1.

The Kansas plaintiffs filed the lawsuit on behalf of themselves and all other individuals who ordered and purchased an item from Applebee's WeightWatchers menu between September 5, 2004, and September 5, 2008. Some of the Kansas plaintiffs claimed to have eaten at Applebee's as many as thirty or fifty times in the year preceding September 2008, presumably because they thought the WeightWatchers menu items fit within their diet plans. *Id.* ¶¶ 10-11.

The Kansas plaintiffs, like the Illinois Plaintiffs, allege Defendants are liable for consumer fraud and unjust enrichment. However, unlike the Kansas plaintiffs, the Illinois Plaintiffs also allege breach of contract and breach of express and implied warranties. Further, unlike the Illinois Plaintiffs, the Kansas plaintiffs allege civil conspiracy and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

4

§ 1962(c) ("RICO"). The factual allegations giving rise to all claims are substantially the same.

Discovery has commenced in the Kansas action. Defendant Applebee's 30(b)(6) depositions occurred on February 17-18, 2009, and Defendants have produced tens of thousands of pages of documents pursuant to discovery requests. Norris Decl. ¶ 5. Several depositions have also been scheduled in the Kansas action.

Furthermore, since the filing of the instant motion, the Kansas court issued an opinion granting in part and denying in part Defendants' Motion to Dismiss. *Valiente v. DineEquity, Inc.*, Civil Action No. 08-2416 -KHV (D. Kan., Sep. 25, 2009). The Kansas court dismissed all of the Kansas plaintiffs' state law claims on the grounds that were preempted by the Nutritional Labeling and Education Act of 1990, 21 U.S.C. § 301 ("NLEA"). The Kansas court also dismissed Defendant DineEquity from all RICO claims. *Id.* Thus, the only causes of action still pending in the Kansas action are RICO claims against the Defendants Applebee's and WeightWatchers. *Id.*

**D.     Panel on Multidistrict Litigation Proceedings**

On August 11, 2009, Defendants filed a motion before the MDL Panel under 28 U.S.C. § 1407 for transfer of the Kansas and Illinois actions, as well as two similar actions in Ohio and Kentucky. Dkt. 45. The motion asks the MDL to transfer the cases for pre-trial consolidation or coordination purposes only. *Id.*

## II. ANALYSIS

Defendants move to transfer this action to the District of Kansas. Defendants argue transfer of venue is appropriate under 28 U.S.C. § 1404(a). Defendants alternatively argue that the claims in the Kansas action are essentially the mirror image of the claims in this action and should be transferred under the first-to-file rule. Plaintiffs contend that transfer is not appropriate on either basis. In the alternative, Defendants ask the Court to stay the instant proceedings pending resolution in the Kansas case or an MDL ruling.

**A.     28 U.S.C. § 1404(a)**

Section 1404(a) provides: "For the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision to transfer venue under 28 U.S.C. § 1404(a) requires a weighing of factors for and against transfer. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). This weighing "involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id.* As the moving party, Defendants have the burden of demonstrating that the District of Kansas is clearly more convenient and/or that a transfer under 1404(a) will better

serve the interests of justice. *Id.* at 219-20.

Several factors must be met for an action to be transferred to another venue: "(1) venue is proper in this district; (2) venue [and jurisdiction are] proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice." *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007); *Grossman v. Smart* 73 F.3d 364 (7th Cir. 1995). Neither party disputes that the first and second conditions are met. All that is disputed is whether the interests of convenience and justice require a transfer of venue to the District of Kansas.

### 1. Convenience of the Parties and Witnesses

To evaluate the convenience of one venue over another, courts look at the following five factors: "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses." *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000).

**a. Plaintiff's choice of forum.** The plaintiff's choice of forum is usually given substantial weight, particularly if it is also the plaintiff's home forum. *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007). However, this weight is greatly discounted in class actions. *Blumenthal v. Management Assistance, Inc.*, 480 F. Supp. 470, 472 (N.D. Ill. 1979) ("[P]laintiff's choice of a forum becomes substantially less important when he sues representatively on behalf of a class . . ."). Because the named

Plaintiffs here purport to represent a nationwide class, if class certification occurs, the named Plaintiff's choice of venue will not be the home venue for all plaintiffs and any venue selected is bound to be inconvenient to some plaintiffs.

Furthermore, the plaintiff's choice of forum is given less deference "when another forum has a stronger relationship to the dispute." *Amorose*, 521 F. Supp. 2d at 735. In this case, the only relations to the Northern District of Illinois are that the named Plaintiffs reside in Illinois and the Applebee's WeightWatchers menu items are available in Illinois. On the other hand, Applebee's is headquartered in Kansas. Because Applebee's actions will be the subject of this case and their WeightWatchers menu items are available across the country, the District of Kansas has a stronger connection to the dispute than does the Northern District of Illinois. Thus, Plaintiffs' choice of forum is given less deference in the instant case.

**b.  Situs of the material events.** The material events in this case concern the conduct of Defendants. The conduct which is the focus of this suit is decisions by Defendants to market and sell Applebee's WeightWatchers Menu items with allegedly misrepresented nutritional information, not the purchases by Plaintiffs. The relevant decisions would have been made by employees of the Defendants at a headquarters office in Kansas, New York, or California.[3] Defendants argue that Applebee's is the main Defendant and the majority of

---

[3]Applebee's is a Delaware corporation with headquarters in Lexana, Kansas; DineEquity is a Delaware corporation with headquarters in Glendale, California; WeightWatchers is a Virginia corporation with headquarters in New York, New York. Answers & Aff. Defenses. DineEquity, Inc. is a holding Company which obtained control of Applebee's in 2007. WeightWatchers, Inc. licensed Applebee's the rights to use the WeightWatchers name and POINTS® system for the menu items.

decisions regarding the WeightWatchers menu items would have been made at Applebee's headquarters in Kansas. This factor weighs in favor of transfer.

**c.     Relative ease of access to sources of proof.** In this case, documents and decision-making employees of the Defendants are located in Kansas, New York, and California. However, Defendants claim that the focus of discovery will concern Applebee's headquarters in Kansas. In support of this statement, Defendants point to the fact that Applebee's and DineEquity's 30(b)(6) depositions took place in Kansas and the individuals listed in Defendants' initial Rule 26(a)(1) disclosures work in Kansas. During oral arguments, Defendants alerted the Court to the fact that Plaintiffs in all actions, including the Illinois action, have been sharing discovery, almost all of which has come from Applebee's Kansas headquarters. Plaintiffs failed to counter by identifying any evidence or potential witnesses, besides the named Plaintiffs, available in Illinois but not Kansas. This factor weighs in favor of transfer.

**d.     Convenience of the parties.** In arguing the inconvenience of a Kansas venue, Plaintiffs point to the considerable time and expense incurred by their counsel to attend Applebee's Rule 30(b)(6) depositions in Kansas as part of the Kansas Action. When considering the convenience of the parties, courts do not generally consider the cost incurred by counsel in interviewing out-of-state witnesses. Furthermore, the class of putative plaintiffs is all *nationwide* consumers of Applebee's WeightWatcher menu items. Because Defendants have agreed to take Plaintiffs' depositions in Illinois, they will not be inconvenienced by a

transfer of this action to Kansas. While Kansas is no more convenient for the Defendants headquartered in New York and California, Defendant Applebee's headquarters in Kansas. Kansas is therefore more convenient for one Defendant. None of the Defendants is headquartered in Chicago. Therefore, Kansas is no less convenient than Chicago for the parties.

e.     **Convenience of witnesses.** The convenience of non-party witnesses should be given more consideration than party witnesses under this factor, "since party witnesses normally must appear voluntarily." *Amorose*, 521 F. Supp. 2d at 736. Non-party witnesses in this action include employees of the Defendants who would not testify as Rule 30(b)(6) witnesses. Therefore, Kansas would be more convenient for Applebee's non-party witnesses, but not so for DineEquity's or WeightWatcher's non-party witnesses. Nevertheless, whether the case is transferred or retained, some witnesses will reside more than 100 miles from the courts and therefore outside of the Courts' subpoena power. Fed. R. Civ. P. 45(c)(3)(A)(ii), *Heller Financial, Inc. v. Riverdale Auto Parts, Inc.*, 713 F. Supp. 1125, 1130 (N.D. Ill. 1989). This factor does not favor transfer.

Thus, given the above considerations, the relative convenience of choosing the District of Kansas over the Northern District of Illinois does not tip the scales significantly in favor of transfer. A party will not show that transfer is proper by merely shifting the convenience from one party to another. *In re National Presto Industries, Inc.*, 347 F.3d 662, 665 (7th Cir. 2003) ("[W]hen the inconvenience of the alternative forum is comparable there is no basis for a change of venue.").

**2. Interests of Justice**

A decision to transfer venue under § 1404(a) relies heavily on consideration of the interests of justice, which "may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220. In considering the interests of justice, the Court does not consider the merits of the underlying claim, but rather the public's interest in conserving scarce judicial resources by "efficient administration of the court system." *Id.* at 220-21. In determining which venue is more likely to result in the swift administration of justice, courts analyze such factors as trying related litigation together, ensuring a speedy trial, and having the trial before a judge who is familiar with the applicable law. *See Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989); s*ee also Amoco*, 90 F. Supp. 2d at 961-62 (listing these and other factors to consider, such as the desire of communities to adjudicate matters that affect them directly).

11

**a.     Trying related litigation together.** A court will consider the level of familiarity of each court with the facts and circumstances surrounding the controversy, because "1404(a) was designed to prevent the situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts." *Aland v. Kempthorne*, 2007 WL 4365340 at * 5 (N.D. Ill. 2007). The District of Kansas is currently the venue of the Kansas action, which is substantially similar to the instant case. The parties and claims in the Kansas and Illinois Actions are so similar that it would be wasteful and duplicative to have two different courts familiarize themselves with the controversy.

The named plaintiffs in the instant case and in the Kansas Action purport to represent the same nationwide class of persons who ordered and purchased items from the WeightWatchers menu at Applebee's from 2004 forward. The defendants in both actions are the same.

The claims made in both actions are also substantially similar. A court must consider the substance of a claim over the form when determining that a claim is duplicative. *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 572 F. Supp. 1210, 1214 (N.D. Ill. 1983). The claims in the instant case allege the violation of Illinois consumer fraud statutes and contract claims, whereas the Kansas action is based on alleged violations of federal RICO law[4]. However, though the claims are based on different underlying law, they are substantially similar because they are based on the same underlying facts. *See Sylverne*

---

[4]The Kansas action's claims based on Kansas state law were dismissed in *Valiente v. DineEquity, Inc.*, Civil Action No. 08-2416 -KHV (D. Kan., Sep. 25, 2009) while this motion was pending.

*v. Data Search N.Y., Inc.*, 2008 WL 4686163 at * 2 (N.D. Ill., May 28, 2008) (granting leave to file a consolidated class action based on common, though not identical, facts showing a common question of law or fact). Specifically, the underlying issue is whether Defendants misrepresented the nutritional information for Applebee's WeightWatchers menu items to the detriment of Plaintiffs.

In addition, the Kansas action is further along than the Illinois action. The Kansas action was filed approximately two months before the instant case and that court has already become familiar with many of the factual circumstances surrounding the allegations. Discovery in the Kansas action is significantly underway, whereas discovery has not yet begun in the Illinois action. Allowing discovery and motion practice on these issues to proceed in two different district courts would mean the duplicative production of documents and witnesses and the briefing of near identical issues before different judges.

Judge Kathryn Vratil issued an opinion dismissing the state court claims in the Kansas action on the basis of federal preemption, finding that the NLEA preempted all of the plaintiffs' state law claims. This issue is almost certain to arise in the Illinois action, as the lawyers for the defendants are the same in both actions, and all of the claims in the Illinois action are state law claims. It would go against the public's interest in judicial economy to allow two different courts to hear nearly identical motions.

In addition to the inefficiency of having two district courts decide discovery disputes, the preemption issue, motions for class certification and the myriad other duties of a district

court, if either party decides to appeal a decision, two different circuit courts would be required to decide the same issues for the same parties. This factor weighs heavily in favor of transfer.

**b. Speed at which the case will proceed to trial**. Given that the Kansas action is substantially further along than the Illinois action, that case will likely proceed to trial sooner than the instant case. However, Defendants' contention that the average speed of litigation is swifter in the District of Kansas than it is here does not convince the Court. The raw statistics do not show a large disparity between districts. *See* Fed. Ct. Management Statistics, *available at* http://www.uscourts.gov/fcmstat/index.html. This factor weighs in favor of transfer.

**c. Familiarity with applicable law.** The applicable law in this case is Illinois statutory and common law, and, for preemption purposes, the NLEA. The Northern District of Illinois is undoubtedly more familiar with the application of Illinois law, but federal courts have experience applying the law of foreign states. More compelling is the Kansas court's familiarity with the issue of federal preemption of state law claims. Having just decided the issue in the Kansas Action, that court is intimately familiar with NLEA preemption of state law claims and so could more efficiently determine whether or not the Illinois action is also preempted. This Court, on the other hand, would have to spend valuable time acquainting itself with the NLEA in order to decide the issue of preemption. This factor weighs heavily in favor of transfer.

**d.     The relation of the community to the occurrence.** This final factor is often given a great deal of weight. *See, e.g., Amoco*, 90 F. Supp. 2d at 962. However, because the putative class is national in scope, there is no compelling community interest that would be preserved by the selection of one venue over another. This factor is venue neutral.

Given the above considerations, the interest of conserving scarce judicial resources strongly suggests the propriety of transferring this case to the District of Kansas. While Kansas is not clearly more convenient for either party, the Court will transfer the Illinois action to the District of Kansas in the interest of saving judicial resources.

**B.     First-to-File**

Defendants have argued that this case should be transferred to the District of Kansas under the first-to-file rule. This rule states that when two similar actions are filed before two different federal judges, judicial economy favors a rule that allows only the first-filed case to proceed. *See Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993). Because the Court has determined that transfer is appropriate under 28 U.S.C. §1404(a), it does not reach the merits of this argument.

**C.     Estoppel and Waiver of Right to Request Transfer**

Plaintiffs' final arguments are that, even if transfer would be proper, the Defendants waived the right to request a transfer because they consented to the jurisdiction of this Court, and the Defendants should be estopped from making such a request because it was made eight months after the filing of the action. However, a defendant does not waive the right to

request a transfer of venue under 28 U.S.C. § 1404(a) by consenting to the jurisdiction of a magistrate judge to decide the case. Plaintiffs misunderstand the effect of consenting to this Court's jurisdiction under 28 U.S.C. § 636(c)(1). The parties have only consented that a magistrate judge, not a district judge, will decide all motions brought before the court - including this motion to transfer venue. The consent to a magistrate judge does not prevent Defendants from seeking to transfer this case to Kansas.

Moreover, Defendants are not estopped from requesting a transfer of venue because they did not unduly delay in bringing the current motion to transfer venue. The case was removed from the circuit court to federal court less than three months before the current motion was filed. No motions to dismiss have been filed and discovery has not yet commenced in the Illinois action.

## CONCLUSION

For the reasons set forth in this opinion, **Defendants' Motion to Transfer Venue to the United States District Court for the District of Kansas is granted.**

**SO ORDERED THIS 9th DAY OF OCTOBER 2009.**

_____
**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

Copies sent to:

Trenton H. Norris
Angel A. Garganta
Rachel L. Chanin
ARNOLD & PORTER LLP
275 Battery Street, Ste. 2700
San Francisco. CA 94111

Charles S. Bergen
Katherine P. Meyers
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606

Attorneys for the Defendants

Larry D. Drury
James Rowe
LARRY D. DRURY, LTD.
205 West Randolph Street, Ste. 1430
Chicago, IL 60606

Ben Barnow
Erich Schork
BARNOW & ASSOCIATES, P.C.
1 North LaSalle Street, Ste. 4600
Chicago, IL 60602

Attorneys for the Plaintiffs